UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

DORLIS A. TRENT and
JOSEPH C. TRENT,

    Plaintiffs

v.                              CIVIL ACTION NO. 2:04-0324

UNITED STATES OF AMERICA,

    Defendants

MEMORANDUM OPINION AND ORDER

This matter, in which the plaintiffs seek a refund of income taxes paid for the year 1999, is before the court on defendant's motion for summary judgment, filed March 7, 2005, and plaintiffs' motion to deny defendant's motion for summary judgment, filed March 22, 2005, which the court treats as a responsive memorandum.

I.

Plaintiffs' son, Clinton Michael Trent, was injured in an automobile accident in 1991, subsequent to which a lawsuit was filed on his behalf in 1993 in the Circuit Court of Mingo County, West Virginia.  (Def. Mem. in Supp. Mot. for Summ. J. at 1, Pl.

Mem. in Supp. of Denial at 1.)¹  An agreement for settlement of the lawsuit was reached in 1999 and provided that Clinton Michael Trent receive $5,000,000.  (Id.)  Clinton Michael Trent was an adult at the time of his disabling accident, but because of the severity of his injuries, the state court required a summary proceeding before approving the settlement.  (Compl. ¶¶ 6, 19.)

In the order approving the settlement and directing distribution of the $5 million, dated December 13, 1999, the state court directed that $729,874 of the $5 million be disbursed to Trent's mother, Dorlis Trent, who is a plaintiff in this action but was not a party in the state action, "for the past attendant care and support which she and Clinton Michael's father have provided their son since he sustained his injuries."²  (Dec. 13, 1999, order at 2, attached as Exh. A to Def. Mem.)

---

¹ The suit apparently was filed on behalf of two parties injured in the accident, Clinton Michael Trent and Jamie Hatfield, and is styled as follows: Clinton Michael Trent, Jamie Hatfield, Brenda Bailey, Committee for Jamie Hatfield, and Donald Richard Hatfield, Next-Friend of Jamie Hatfield v. SuperAmerica Group, Inc., a corporation, doing business as SuperAmerica, Cornell "Pooker" Lester, Jr., and Roger Rasnick; Civil Action No. 93-C-820.

² Defendant attached a copy of the December 13, 1999, order to its memorandum in support of its motion for summary judgment.  (Exh. A.)  Neither party, however, provided a copy of the petition and application of Dorlis Trent, Legal Guardian and Conservator of Clinton Michael Trent, to settle Clinton Michael Trent's claims, or the settlement agreement itself.

Plaintiffs made an estimated income tax payment of $283,000 to the Internal Revenue Service in January 2000. (Def. Mem. at 2; Pl. Mem. at 2.)

On or about April 13, 2000, plaintiffs filed an individual income tax return, Form 1040, for the year 1999, on which they declared "Other income" in the amount of $729,874 as "reimbursement for nursing and attendant care services." (Def. Mem., Exh. B) Plaintiffs' 1040 form was prepared by Carl Ferrell, CPA, who attached a Long Schedule SE, indicating that Dorlis Trent had earned the entire amount as self-employment income and calculating her self-employment tax thereon as $28,549. (Id.) A brief statement of "additional information" is attached to the 1040 form, indicating that "[i]n settlement of a lawsuit over injuries sustained by taxpayer's son, taxpayer, Dorlis A. Trent, was paid $729,874 on December 17, 1999, for attendant care services provided to her son after he sustained his injury. This amount is shown as other income on line 21 of form 1040." (Id.) Plaintiffs' tax liability for 1999 was calculated on the Form 1040 as being $253,687 in income tax and and $28,549 in self-employment tax for a total of $282,236. (Id.) They claimed and received an income tax refund of $764 for the year. (Id.)

3

Plaintiffs filed in January 2001 an amended individual income tax return, Form 1040X, claiming that the $729,874 listed as "Other income" for the year 1999 was not, in fact, taxable income because it was received as the result of a personal injury lawsuit. (Def. Mem. at 2, Exh. C; Pl. Mem. at 2.) Plaintiffs' form, completed by their attorney,[3] stated:

> By Court order, dated December 13, 1999, . . . the Court awarded Dorlis Trent $729,874.00 for her losses which resulted from a personal injury to her son, Clinton Michael Trent, as a result of an automobile accident that he was in, which left him totally paralyzed. The Trent's accountant believed that this amount would be taxable because [Mrs. Trent] received this money and was not the injured party. My subsequent research, including telephone calls to the Internal Revenue Service, indicates that any amounts received by individuals as a result of a personal injury law suit, whether those receipts are for past wages or for any other reason, are not taxable as income.[4] In this case, Clinton Michael Trent was involved in an automobile accident which rendered him completely paralyzed. All settlement proceeds arising out of this law suit arose as a result of a personal injury law suit, and should therefore have passed to the damaged individuals tax free. Therefore, we

---

[3] The attorney indicated below the signature line that he was acting as "POA," presumably meaning power-of-attorney.

[4] Plaintiffs offer no names or information about the individuals at the Internal Revenue Service with whom they purport to have spoken.

>      are asking for a refund of the estimated tax
>      payment which Mrs. Trent made.

The Internal Revenue Service denied plaintiffs' request for return of the 1999 tax payment of $282,236 by letter dated April 8, 2002.  (Def. Mem. at 2; Pl. Mem. at 2; Compl. ¶ 8.)

Plaintiffs filed this action on April 2, 2004.  They seek reimbursement of $282,236, together with costs and interest, asserting that the monies were received as the result of a personal injury lawsuit or, alternatively, as a gift.  (Compl. ¶¶ 12-13, 18.)  It is undisputed that plaintiffs were not parties to the civil action filed in the Circuit Court of Mingo County on behalf of their son.

                              II.

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Material facts are those necessary to establish the elements of a party's cause of action.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  A genuine issue of material fact exists if, in viewing the record and all

reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. <u>Id.</u>  The moving party has the burden of showing -- "that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case."  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986).  If the movant satisfies this burden, then the non-movant must set forth specific facts as would be admissible in evidence that demonstrate the existence of a genuine issue of fact for trial.  Fed. R. Civ. P. 56(c); <u>Id.</u> at 322-23.  A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-moving party.  <u>Williams v. Griffin</u>, 952 F.2d 820, 823 (4th Cir. 1991).

     Conversely, summary judgment is not appropriate if the evidence is sufficient for a reasonable fact-finder to return a verdict in favor of the non-moving party.  <u>Anderson</u>, 477 U.S. at 248.  Even if there is no dispute as to the evidentiary facts, summary judgment is also not appropriate where the ultimate factual conclusions to be drawn are in dispute.  <u>Overstreet v. Kentucky Cent. Life Ins. Co.</u>, 950 F.2d 931, 937 (4th Cir. 1991).

     In reviewing the evidence, a court must neither resolve disputed facts or weigh the evidence, <u>Russell v. Microdyne Corp.</u>,

6

65 F.3d 1229, 1239 (4th Cir. 1995), nor make determinations of credibility.  <u>Sosebee v. Murphy</u>, 797 F.2d 179, 182 (4th Cir. 1986).  Rather, the party opposing the motion is entitled to have his or her version of the facts accepted as true and, moreover, to have all internal conflicts resolved in his or her favor.  <u>Charbonnages de France v. Smith</u>, 597 F.2d 406, 414 (4th Cir. 1979).  Inferences that are "drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion."  <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 655 (1962).

                              III.

A.   <u>The Parties' Positions</u>

     Defendant asserts that it is entitled to summary judgment because plaintiffs cannot establish the elements for income exclusion by showing that the portion of the settlement disbursed to plaintiff Dorlis Trent was received through a cause of action in the nature of a tort and "on account of personal physical injuries."  (Def. Mem. at 6.)  Defendant further argues that because plaintiffs did not suggest when filing their 1040X form that the monies disbursed to them were a gift, plaintiffs are now barred from contending that they were.

     Plaintiffs respond that no settlement could have been reached if not for the occurrence of an underlying tort, and that

                                7

they thus have met their burden of showing that the money was received through a tort cause of action. (Pl. Mem. at 5.) They go on to state that any person receiving any portion of the proceeds of a settlement is entitled to enjoy the same income exclusion as the injured party. (<u>Id</u>.) Plaintiffs do not respond to defendant's contention that they are barred from arguing that the proceeds disbursed to Dorlis Trent were a gift.

B.  <u>Income Exclusion</u>

Gross income for federal taxation purposes is "all income from whatever source derived." 26 U.S.C.A. § 61(a). This "definition extends broadly to all economic gains not otherwise exempted." <u>Commissioner v. Banks</u>, – U.S. – (2005) <u>citing</u> <u>Commissioner v. Glenshaw Glass Co.</u>, 348 U.S. 426, 429-30 (1955) and <u>Commissioner v. Jacobson</u>, 336 U.S. 28, 49 (1949). Items specifically excluded from gross income are set forth in sections 101 through 140. Plaintiffs claim that one of those exclusions, compensation for injury or sickness, applies here. <u>See</u> 26 U.S.C.A. § 104. Section 104(a)(2) states that gross income does not include "the amount of any damages (other than punitive damages) received (whether by suit or agreement and whether as a

lump sum or as periodic payments) on account of personal physical injuries or physical sickness."[5]

The Commissioner denied plaintiffs' request for a refund by letter dated April 8, 2002. The basis of the denial is not readily apparent, because neither party attached to their memoranda a copy of the Commissioner's correspondence. In any event, the United States Supreme Court has held that the Commissioner's "ruling has the support of a presumption of correctness, and the petitioner has the burden of proving it to be wrong." Welch v. Helvering, 290 U.S. 111, 115 (1933); see also United States v. Janis, 428 U.S. 433, 439 (1976). Particularly inasmuch as the amount in dispute was declared both in the December 13, 1999, circuit court order and on plaintiffs' 1040 form for the year 1999 to have been received for services, plaintiffs bear the burden of rebutting that presumption.

Plaintiffs argued to the Commissioner that the money they received "should . . . have passed to the damaged individuals tax free," but they produced no evidence here showing that they were signatories to the settlement agreement resolving

---

[5] The phrase "other than punitive damages" was added by amendment of 1996. At the same time, the word "physical" was added to describe sickness and injuries.

their son's civil action.  Indeed, they were not parties to that action.  It appears, then, that while a portion of the settlement proceeds passed directly to plaintiffs, it only did so because the person controlling disposition of those monies – Clinton Michael Trent or someone acting on his behalf – directed the disbursement through negotiation of the settlement agreement, which disbursement subsequently was approved by the court's December 13, 1999, order.[6]  It was the right of Clinton Michael Trent to compensation, rather than the right of his parents, that was considered in the negotiation of his settlement.  Upon satisfaction, Clinton Michael Trent realized the benefit of $5 million, without necessarily receiving that sum.  The circuit court, presumably in approval of the terms of the settlement agreement, directed certain portions of the realized total to be used for payment of obligations previously incurred for care and litigation expenses.  Those amounts included litigation costs,

---

[6] The parties have provided little information about the lawsuit filed on behalf of Clinton Michael Trent.  It appears, however, that he had suffered an "extensive brain injury" (Pl. Mem. at 6) in the accident that was the subject of his state court civil action.  The petition to settle his claims in that action was filed by his mother, plaintiff herein Dorlis Trent, as legal guardian and conservator, and a guardian *ad* *litem* was appointed.  (Dec. 13, 1999, order.)  Dorlis Trent was authorized to execute releases on behalf of her son.  (*Id*.)  The court directed that the net remaining settlement proceeds be used to establish a trust for Clinton Michael Trent's benefit.  (*Id*.)

attorney fees, previous treatment paid for by the West Virginia Department of Health and Human Resources, and the disbursement to plaintiff Dorlis Trent for past attendant care and support. (December 13, 1999, order at 2.)

While payments realized by Clinton Michael Trent on account of his personal injuries unquestionably are exempt from his income for income tax purposes, it does not follow that subsequent expenditures out of those funds when received by others are exempt as well.  Instead, plaintiffs must establish some independent right in the settlement proceeds, but they have presented no evidence that would do so.

The state circuit court's order of December 13, 1999, left no doubt as to the purpose of the disbursement to Dorlis Trent; it was "for the past attendant care and support" that she gave her son.  Plaintiffs' 1040 form for the tax year 1999, filed in April 2000, contains a similar notation.  The presumption, then, is that the money was disbursed to Dorlis Trent for the purpose stated in these documents.  Plaintiffs have offered no evidence to rebut this presumption.  They unquestionably were not parties to their son's lawsuit, and there is no indication that they were entitled to participate in settlement negotiations as claimants to the $5 million in proceeds of that settlement.

11

Moreover, there is no reason to assume that the defendant or defendants in the circuit court lawsuit contemplated a disbursement to plaintiff Dorlis Trent prior to entering into the settlement agreement. The evidence provided by the parties shows simply that Dorlis Trent received the $729,874 income on account of past services rendered in caring for her son.

C.   Income Exclusion for Gifts Received

Plaintiffs advance the argument in Count II of their complaint that the $729,874 "ordered" disbursed to Dorlis Trent at the time of the settlement of her son's claim was a gift. Presumably, plaintiffs wish to invoke the exemption set forth in 26 U.S.C.A. § 102(a), which excepts from gross income "the value of property acquired by gift, bequest, devise, or inheritance." Defendant avers that because plaintiffs did not suggest that the distribution to Mrs. Trent was a gift when asserting their claim for refund with the Internal Revenue Service, they cannot present that issue now. Plaintiffs do not address defendant's argument on that ground.

Defendant cites several cases in support of its position, including Real Estate Land Title & Trust Co. v. United States, 309 U.S. 13 (1940), in which the Supreme Court declined

to consider an argument that the plaintiff did not first make to the Commissioner. Id. at 17-18 ("petitioner is precluded in this suit from resting its claim on another ground.") The United States Court of Appeals for the Fourth Circuit explains:

> Section 7422(a) requires the filing of a timely claim for refund before a district court can obtain jurisdiction over a tax refund action so that the Internal Revenue Service will have the opportunity to consider and dispose of a taxpayer's claim without the expense and time involved in litigating the suit. Mallette Bros. Const. Co. v. United States, 695 F.2d 145 (5th Cir. 1983). Accordingly, the claim for refund must contain sufficient information to allow the Commissioner to address the merits of the dispute. Consistent with this objective, the Secretary of the Treasury enacted § 301.6402-2(b)(1), which requires a taxpayer to state the specific grounds upon which a refund is claimed and the factual basis pertinent thereto . . .

Beckwith Realty v. United States, 896 F.2d 860, 862 (4th Cir. 1990). Without a plaintiff having filed "an effective claim for a refund," a district court has no jurisdiction to hear the dispute under 26 U.S.C. § 7422(a). Id. at 863.

The 1040X form filed by plaintiffs makes no reference to the possibility that the distribution to Dorlis Trent from settlement proceeds was a gift from her son. Plaintiffs have thus failed to make an "effective claim" of gift before the

13

Commissioner, and the court has no jurisdiction to consider it now.

## IV.

For the reasons stated herein, it is ORDERED that defendant's motion for summary judgment be, and it hereby is, granted.  It further is ORDERED that plaintiffs' motion to deny defendant's motion for summary judgment be, and it hereby is, denied.

The Clerk is directed to forward copies of this written opinion and order to all counsel of record.

DATED: May 2, 2005

John T. Copenhaver, Jr.
United States District Judge

14